**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 20-cv-24093-KMM/LOUIS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

PAVEL LUIS HERNANDEZ MERINO,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court upon Plaintiff's (the "Government") Motion for Judgment on the Pleadings (ECF No. 10). This matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable K. Michael Moore, United States District Court Judge, to take all necessary and proper action as required by law and for a Report and Recommendation on any dispositive matters (ECF No. 5). No Response was filed and the time to do so has long since passed. Having considered the Motion, the pleadings, and being otherwise fully advised in the premises, for the reasons set forth below, the undersigned recommends that the Government's Motion be **GRANTED**.

### I.   BACKGROUND

Defendant Pavel Luis Hernandez Merino ("Merino") was born in Cuba in 1982 (ECF No. 1-10 at 3). Prior to his naturalization, he was a citizen of Cuba (*id.*). Merino became a lawful permanent resident of the Unites States in May 2006 and applied for naturalization in November 2016 (*id.* at 1-2). On his naturalization application, Defendant answered "No" to Question 22 of Part 12, which asked: "Have you EVER committed, assisted in committing, or attempted to

1

commit, a crime or offense for which you were NOT arrested?" (*id*. at 15 (emphasis in original)). Defendant signed the naturalization application certifying under penalty of perjury that he provided or authorized all of the information in his application and that the contents of the application were complete, true, and correct (*id*. at 18). During his naturalization interview in March 2018, Defendant confirmed the answer to Question 22, Part 12, of his naturalization application stating that he had never committed a crime or offense for which he was not arrested (ECF No. 1 at ¶ 23). At the conclusion of the interview, Defendant again signed the naturalization application certifying under penalty of perjury that the contents of the application were complete, true, and correct (ECF No. 1-10 at 20). In April 2018, Defendant was admitted as a citizen of the United States and was issued Certificate of Naturalization (ECF No. 1-11).

The following month, May 2018, Defendant was charged by Criminal Indictment in the United States District Court for the Southern District of Florida with one count of conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349, and nineteen counts of health care fraud, in violation of 18 U.S.C. § 1347 (ECF No. 1-4). The indictment charged Defendant with committing the crimes from in or around July 2014 through in or around July 2017 (*id*. at 5, 7). In September 2018, Defendant entered into a plea agreement and pleaded guilty to the conspiracy count, in violation of 18 U.S.C. § 1349 (ECF No. 1-5). As part of this plea agreement, Defendant also executed a Factual Basis in Support of Plea ("Factual Proffer") (ECF No. 1-6). Within the Factual Proffer, Merino attested to being the true owner of Americare, a company which he owned and operated to further health care fraud (*id*.). Specifically, Defendant, along with co-conspirators, submitted or caused Americare to submit via interstate wires false and fraudulent claims totaling approximately $8,550,040.00 to insurance plans, which resulted in reimbursement payments to Americare totaling $3,694,969.00. Defendant was sentenced to 57 months

imprisonment (ECF No. 1-9 at 19).

In October 2020, the Government filed the instant action seeking to revoke his naturalized United States citizenship under 8 U.S.C. § 1451(a) based on his participation in criminal activity that he concealed throughout the naturalization process and that disqualified him from United States citizenship (ECF No. 1). Defendant was properly served while incarcerated at the Federal Detention Center, but never answered the Complaint. In January 2021, the Government filed this instant Motion seeking judgment on the pleadings (ECF No. 10). Defendant, who unbeknownst to the Government had been transferred from the Federal Detention Center to a Residential Reentry Center, did not receive a copy of the instant Motion until May 6, 2021 (ECF No. 11). Defendant had not filed a response to the Motion, and the time to do so has since passed.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." *Id*. "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Interline Brands, Inc. v. Chartis Specialty Ins. Co*., 749 F.3d 962, 965 (11th Cir. 2014) (citation omitted). In ruling on a motion for judgment on the pleadings, "[a]ll facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005) (citation omitted).

Congress has authorized the United States to seek denaturalization in any case where a naturalized citizen either: (1) illegally procured naturalization; or (2) procured naturalization by concealment of material facts or by willful misrepresentation. 8 U.S.C. § 1451(a). "An individual has 'illegally procured' naturalization if he was statutorily ineligible to naturalize at the time he

became a naturalized citizen." *United States v. Garcia*, No. 14-CV-22397-KMM, 2015 WL 12533126, at *3 (S.D. Fla. Sept. 18, 2015*); see also Fedorenko v. United States*, 449 U.S. 490, 506 (1981). Under the latter ground set forth in section 1451(a), an individual is subject to denaturalization if he procured naturalization by either concealment or misrepresentation, if the concealment or misrepresentation was willful, and if the fact at issue was material. *See id.*; *Kungys v. United States*, 485 U.S. 759, 767 (1988) (citing *Fedorenko*, 449 U.S. at 507, n.28).

To prevail in a denaturalization action, the Government must always prove its case, even when the defendant defaults. *Garcia*, 2015 WL 12533126, at *3; *Klapprott v. United States*, 335 U.S. 601, 612-13 (1949). The Government's standard of proof in a denaturalization case is heightened because the goal of such litigation is to deprive an individual of the "priceless benefits that derive from" United States citizenship. *Schneiderman v. United States*, 320 U.S. 118, 122 (1943). In such instances, the Government must prove its case "by clear, unequivocal, and convincing evidence which does not leave the issue in doubt." *Klapprott*, 335 U.S. at 612. However, once the Government has met its burden of proving that a naturalized citizen improperly procured his naturalization, the court has no discretion to excuse the defendant's conduct and must enter a judgment of denaturalization. *Fedorenko*, 449 U.S. at 517. Furthermore, where, as here, the "Defendant has not contested the Government's facts or evidence, the Court must assume the Government's facts are true and decide whether it has satisfied the legal requirements for denaturalization." *United States v. Campos*, No. 1:16-CV-20777, 2016 WL 8678885, at *3 (S.D. Fla. Nov. 3, 2016).

## III.   ANALYSIS

The Government maintains that the undisputed facts establish four independent legal grounds for denaturalization:

(a) Defendant illegally procured his United States citizenship because, during the statutory period,

4

he committed a crime involving moral turpitude;

(b) Defendant illegally procured his United States citizenship because, during the statutory period, he committed unlawful acts that adversely reflected on his moral character;

(c) Defendant illegally procured his United States citizenship because, during the statutory period, he provided false testimony to procure his naturalization; and

(d) Defendant willfully concealed and made misrepresentations of criminal conduct during the naturalization process.

The Court shall address each ground in turn.

### A. Defendant illegally procured his U.S. citizenship because, during the statutory period, he committed a crime involving moral turpitude.

There are several statutory requirements that an applicant for naturalization must meet before obtaining citizenship. 8 U.S.C. § 1427(a). Among those statutory requirements is the mandate that no person shall be naturalized unless the person "during all periods referred to in this subsection has been and still is a person of good moral character . . . ." 8 U.S.C. § 1427(a)(3). An applicant statutorily lacks good moral character if he commits any number of specified offenses during the statutory period and later either is convicted or admits commission of the crime. 8 U.S.C. § 1101(f)(3). These specified offenses include the commission of "a crime involving moral turpitude . . . or an attempt or conspiracy to commit such a crime" if the individual was convicted of or admits to committing the crime. 8 U.S.C. § 1182(a)(2)(A)(i)(I).

The required statutory period for Merino began five years prior to filing his naturalization application, continuing through the time he took the Oath of Allegiance and became a naturalized United States citizen. 8 U.S.C. § 1427(a). Merino applied for naturalization on November 16, 2016 (ECF. No. 1-10) and took his Oath of Allegiance and became a naturalized U.S. citizen on April 21, 2018 (ECF No. 1-11). Therefore, Merino was required to demonstrate good moral character from November 16, 2011 through April 21, 2018. Here, the pleadings show that Merino conspired

to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349, from in or around July 2014 through in or around July 2017, which was during the statutory period before he naturalized. Such a crime involving fraud constitutes a crime of moral turpitude because it involves "deceit" and "runs contrary to accepted societal duties and involves dishonest or fraudulent activity." *Walker v. U.S. Atty. Gen.*, 783 F.3d 1226, 1229 (11th Cir. 2015) (citing *Itani v. Ashcroft*, 298 F.3d 1213, 1216 (11th Cir.2002)). The criminal indictment and judgment attached to the Complaint (ECF Nos. 1-4; 1-7) prove that Merino committed this crime of moral turpitude. *See Garcia*, 2015 WL 12533126, at *5 (finding indictment and judgment sufficient to prove commitment of crime). Moreover, Merino pleaded guilty to this crime (ECF No. 1-5), detailed his involvement in the Factual Proffer (ECF No. 1-6), and again confirmed his involvement at the change of plea hearing (ECF No. 1-7).

The Court finds that the pleadings undisputedly show that Merino committed the offense of conspiring to commit health care fraud and wire fraud during the statutory period before naturalizing, which precluded him from establishing the requisite good moral character. Merino's criminal activity during the statutory period thus rendered him ineligible to naturalize in April 2018 when he took the oath of citizenship. Accordingly, the Court must denaturalize him on that basis. *See Fedorenko*, 449 U.S. at 517; *Garcia*, 2015 WL 12533126, at *5.

**B. Defendant illegally procured his U.S. citizenship because, during the statutory period, he committed unlawful acts that adversely reflected on his moral character.**

In addition to the statutory bar to good moral character for crimes of moral turpitude, a naturalization applicant lacks good moral character if, during the statutory period, he "[c]ommitted unlawful acts that adversely reflect upon the applicant's good moral character, or was convicted or imprisoned for such acts," unless he "establishes extenuating circumstances." 8 C.F.R. § 316.10(b)(3)(iii). This is a "valid, binding, and a proper basis for denaturalization," and applies

6

even if the unlawful act does not qualify as a crime involving moral turpitude. *Garcia*, 2015 WL 12533126, at *5*; see also* 8 C.F.R. § 316.10(b)(3)(iii).

"In general, crimes involving dishonesty, false statement, or fraud reflect adversely on moral character." *United States v. Dor*, 729 F. App'x 793, 798 (11th Cir. 2018). As such, Merino's participation in a conspiracy to commit health care fraud and wire fraud reflected adversely on his moral character and should have precluded him from naturalizing under 8 C.F.R. § 316.10(b)(3)(iii). Furthermore, no extenuating circumstances existed to excuse Merino's participation in the conspiracy to commit health care and wire fraud. Merino admitted that he participated in the conspiracy (ECF Nos. 1-5; 1-6; 1-7), and he cannot escape the negative impact that his criminal acts had on his moral character. *See Garcia*, 2015 WL 12533126, at *6. Merino is thus is subject to denaturalization under 8 C.F.R. § 316.10(b)(3)(iii) based on his participation a conspiracy to commit fraud. *See Garcia*, 2015 WL 12533126, at *6.

## C. Defendant illegally procured his U.S. citizenship because, during the statutory period, he provided false testimony to procure his naturalization.

An individual who, during the statutory period, has given false testimony for the purpose of obtaining immigration benefits is also precluded from establishing good moral character. 8 U.S.C. § 1101(f)(6). Such testimony is limited to those "oral statements made under oath," *Kungys*, 485 U.S. at 780, and include those "statements made by an applicant in a naturalization examination," *Garcia*, 2015 WL 12533126, at *6 (citing *Bernal v. INS*, 154 F.3d 1020, 1023 (9th Cir. 1998)).

Here, Merino provided false testimony during his naturalization interview in March 2018 when he lied about his participation in a conspiracy to commit healthcare and wire fraud. As an initial matter, there is no doubt that the naturalization interview occurred during the statutory period, which necessarily includes the time a naturalization application is pending. *See* 8 C.F.R.

§ 316.10(a)(1). Second, Merino was under oath at that interview and he swore to the truthfulness of the information on his N-400 application when he initially signed it on November 16, 2016, when he later signed it at his naturalization interview on March 12, 2018 (ECF No. 1-10). Third, the pleadings demonstrate that during his naturalization interview, Defendant confirmed the answer to Question 22, Part 12, of his naturalization application stating that he had never committed a crime or offense for which he was not arrested (ECF Nos. 1 at ¶ 23; 1-10 at 15). At the conclusion of the interview, Defendant yet again signed the naturalization application certifying under penalty of perjury that the contents of the application were complete, true, and correct (ECF No. 1-10 at 20).

Finally, the pleadings show that Merino provided that false testimony deliberately in order to gain an immigration benefit of naturalization. Merino's false testimony occurred during an interview held for the express purpose of determining his eligibility to naturalize (ECF No. 1-10). That false testimony allowed him to naturalize because, had he truthfully admitted his participation in criminal and fraudulent conduct, he would not have been allowed to naturalize. *See Garcia*, 2015 WL 12533126, at *6. Further, "the circumstances, including the simplicity of the questions, show that [the] false testimony was intentional." *See id.* (referring to the simplicity of the questions during a naturalization interview). Moreover, Merino's guilty plea and criminal conviction, which demonstrates that he knowingly committed the crime, "precludes any claim that his false testimony on that point was an innocent mistake." *See id.*

Therefore, Merino's false testimony regarding his commitment of a crime for which he was not yet arrested provides an additional basis upon which to denaturalize Defendant. *See id.*

**D. Defendant willfully concealed and made misrepresentations of criminal conduct during the naturalization process.**

Lastly, the Government maintains that this Court should denaturalize Merino due to his

willful concealment of his criminal conduct throughout the naturalization process. For a court to revoke a grant of citizenship on this basis: (1) the naturalized citizen must have misrepresented or concealed a fact; (2) the misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment. *Kungys*, 485 U.S. at 767. The undersigned finds that all four elements are met here.

First, the record shows that Merino concealed facts before taking the oath of citizenship. On November 16, 2016, Merino filed his N-400 application, which contained false information. Specifically, Merino denied having committed any crime or offence for which he was not arrested (ECF No. 1-10 at 15). This misrepresentation contained within his N-400 application was affirmed to be true and correct by Merino when first submitting the application (*id*. at 18) and again affirmed during his interview (*id*. at 20). In light of Merino's guilty plea and criminal conviction, it is indisputable that he provided false information and concealed his criminal history throughout the naturalization process. *See Garcia*, 2015 WL 12533126, at *7.

Second, Merino's criminal conviction irrefutably shows that his concealment of his criminal activity was willful. Count One for conspiracy to commit health care fraud and wire fraud to which Defendant pleaded guilty states that Defendant "did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree . . . to commit offenses" (ECF No. 1-4). Because Defendant's commission of the crime was knowing and willful, so too was his concealment of that crime. *See Garcia*, 2015 WL 12533126, at *7 (finding there to be "no doubt" that throughout the naturalization process defendant knew and willfully concealed his criminal activity where intent was an element of the crime being concealed). Moreover, as addressed above, the simplicity of the question to which Defendant

provided a false answer "allows for only one reasonable inference" that Merino concealment of his criminal activity was "knowing and deliberate." *See id*.

Third, Merino's misrepresentation was material as a matter of law. A misrepresentation or concealment is material to one's naturalization if the misrepresentation "had a natural tendency to influence the decisions of the Immigration and Naturalization Service" and "to produce the conclusion that the applicant was qualified" to naturalize when in fact, he was not. *Kungys*, 485 U.S. at 772. Courts have previously held that the failure to disclose criminal activity is material because "it would have revealed his ineligibility to naturalize." *Garcia*, 2015 WL 12533126, at *8; *see also United States v. Dor*, No. 9:15-CV-81701, 2016 WL 11083335, at *1 (S.D. Fla. Oct. 25, 2016), *aff'd*, 729 F. App'x 793 (11th Cir. 2018) (finding defendant "procured his United States citizenship by willful misrepresentation and by concealment of a material fact because he failed to disclose his criminal activity . . . during the statutory period of his naturalization."); *United States v. Bogacki*, 925 F. Supp. 2d 1288, 1295 (M.D. Fla. 2012) (finding defendant's failure to disclose his involvement in this criminal enterprise to be material because had he disclosed these crimes, his naturalization application would have necessarily been denied). Here too Merino procured his citizenship through making material misrepresentations and concealments because had he revealed his criminal conduct during the statutory period, his application would have been denied. *See* 8 U.S.C. § 1427(a)(3).

Finally, because Merino "concealed information that would have demonstrated his ineligibility to naturalize, he necessarily meets the 'procurement' prong of the test." *Garcia*, 2015 WL 12533126, at *8. Merino was "presumably disqualified" from naturalizing because he "obtained his citizenship in a proceeding where he made material misrepresentations." *See Kungys*, 485 U.S. at 777. Such a presumption can only be met by "by showing that he would have, in fact,

met the naturalization requirement—good moral character—that his concealment called into question." *Garcia*, 2015 WL 12533126, at *8. Here, Merino is unable to rebut this presumption because his criminal conduct involving fraud automatically precluded him from establishing good moral character at the time of naturalization. *See id.*; *see also Dor*, 729 F. App'x at 798; *Walker*, 783 F.3d at 1229. Thus, Merino's willful concealment of his criminal activity during the naturalization process is an additional basis upon which to denaturalize Defendant.

## IV. RECOMMENDATION

For the forgoing reasons, the undersigned respectfully recommends that the Government's Motion for Judgment on the Pleadings (ECF No. 10) be **GRANTED**.

The Government is directed to serve a copy of this Report and Recommendation upon Merino within **14 days**, and to file a notice confirming service has been made.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable K. Michael Moore, United States District Court Judge, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 26th day of July, 2021.

LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE

11